UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

ROBERT DURBIN, o/b/o
CHERI DURBIN (deceased),

                 Plaintiff,

    v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                 Defendant.

NO.  C15-1756-RSM-JPD

REPORT AND
RECOMMENDATION

Plaintiff Robert Durbin on behalf of Cheri Durbin (deceased), appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied her applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-33, after a hearing before an administrative law judge ("ALJ").  For the reasons set forth below, the Court recommends that the Commissioner's decision be AFFIRMED.

## I.      FACTS AND PROCEDURAL HISTORY

At the time of the first administrative hearing, plaintiff Cheri Durbin was a fifty-one year old woman with a high school education and one year of technical training as a medical assistant.  Administrative Record ("AR") at 39.  Her past work experience includes

REPORT AND RECOMMENDATION - 1

employment for over twenty years as a pharmacy technician from December 1979 to August 2000.  AR at 39-40, 149.

On March 27, 2007, she filed an application for DIB, alleging an onset date of August 31, 2000.  AR at 14, 82.  In her application, plaintiff asserted that she was disabled due to fibromyalgia and degenerative disc disease of the cervical spine.  AR at 82.

The Commissioner denied plaintiff's claim initially and on reconsideration.  AR at 90-92, 99-100.  Plaintiff requested a hearing, which took place on August 7, 2009.  AR at 32-81.  On August 31, 2009, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on his finding that plaintiff could perform her past relevant work.  AR at 16-25.  The Appeals Council denied plaintiff's request for review, AR at 1-3, and plaintiff appealed the denial to this Court in April 2011.

The undersigned remanded the case to the Commissioner for further proceedings on November 4, 2011.  AR at 1122-50.  Specifically, the Court held that the ALJ erred in evaluating plaintiff's credibility "by rejecting plaintiff's testimony on the grounds that it was unsupported by objective medical evidence."  AR at 1133.  The Court found that the ALJ did not meet his burden of stating which pain testimony is not credible and what evidence suggests the claimant was not credible, particularly because plaintiff suffered from fibromyalgia, a disease that is notable for its lack of objective diagnostic techniques.  AR at 1134.  However, the Court held that the ALJ's other two reasons for discounting plaintiff's credibility (inconsistency between plaintiff's testimony and her daily activities and noncompliance with medications and treatment regimen) were clear and convincing reasons for finding her less than fully credible.  Because the case was being remanded for reevaluation of the medical evidence, the Court directed the ALJ to also reevaluate plaintiff's credibility on remand "in

light of the ALJ's error in discounting plaintiff's testimony due to inconsistency with the objective medical evidence."  AR at 1138.

The Court further found that the ALJ erred by rejecting the medical opinion of plaintiff's treating physician, Dr. Anderson, based upon the lack of objective medical findings in Dr. Anderson's treatment notes in light of plaintiff's fibromyalgia diagnosis.  AR at 1142. Finally, the Court held that the ALJ erred by failing to assess plaintiff's functional ability to sit and stand in determining her RFC, and summarily rejecting the opinion of plaintiff's husband Robert Durbin without specific and germane reasons.  AR at 1145-49.

Following remand, plaintiff appeared at a second administrative hearing in December 2012.  AR at 1075-1100.  The ALJ issued a second written decision, again denying plaintiff's claim.  AR at 1056-69.  Plaintiff filed exceptions to the Appeals Council.  AR at 1254-63. However, the Appeals Council denied those exceptions on September 10, 2015, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g).  AR at 1038-42.

On November 9, 2015, plaintiff timely filed the present action challenging the Commissioner's decision.  Dkt. 1-2.  Plaintiff then died on November 17, 2015, at the Providence Regional Medical Center in Everett, Washington, at age fifty-seven.  Dkt. 4.[1] Plaintiff's husband, Robert Durbin, moved to substitute as plaintiff in this matter, Dkt. 4, which was granted.  Dkt. 5.  Plaintiff's amended complaint was filed on December 16, 2015. Dkt. 6.

---

[1] Ms. Durbin's Death Certificate identified her cause of death as anoxic brain injury ("interval: days"), cardiac arrest ("interval: days"), and congestive heart failure ("interval: months").  Dkt. 4-2.

REPORT AND RECOMMENDATION - 3

II.      JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

III.     STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that

erroneously rejected evidence may be credited when all three elements are met).

## IV.     EVALUATING DISABILITY

As the claimant, it is plaintiff's burden to prove that Ms. Durbin was disabled within

the meaning of the Social Security Act (the "Act").  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th

Cir. 1999) (internal citations omitted).  The Act defines disability as the "inability to engage in

any substantial gainful activity" due to a physical or mental impairment which has lasted, or is

expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§

423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if her impairments

are of such severity that she is unable to do her previous work, and cannot, considering her age,

education, and work experience, engage in any other substantial gainful activity existing in the

national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-

99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for

determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§

404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At

step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at

any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step

one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R.

§§ 404.1520(b), 416.920(b).[2]  If she is, disability benefits are denied.  If she is not, the

Commissioner proceeds to step two.  At step two, the claimant must establish that she has one

---

[2] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. § 404.1572.

1   or more medically severe impairments, or combination of impairments, that limit her physical

2   or mental ability to do basic work activities.  If the claimant does not have such impairments,

3   she is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe

4   impairment, the Commissioner moves to step three to determine whether the impairment meets

5   or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d),

6   416.920(d).  A claimant whose impairment meets or equals one of the listings for the required

7   twelve-month duration requirement is disabled.  *Id.*

8        When the claimant's impairment neither meets nor equals one of the impairments listed

9   in the regulations, the Commissioner must proceed to step four and evaluate the claimant's

10   residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the

11   Commissioner evaluates the physical and mental demands of the claimant's past relevant work

12   to determine whether she can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If

13   the claimant is able to perform her past relevant work, she is not disabled; if the opposite is

14   true, then the burden shifts to the Commissioner at step five to show that the claimant can

15   perform other work that exists in significant numbers in the national economy, taking into

16   consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §§

17   404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the

18   claimant is unable to perform other work, then the claimant is found disabled and benefits may

19   be awarded.

20                                    V.    DECISION BELOW

21        On February 19, 2013, the ALJ issued a decision finding the following:

22        1.    The claimant last met the insured status requirements of the Social
               Security Act on December 31, 2005.

23

24

2.   The claimant did not engaged in substantial gainful activity during the period from his/her alleged onset date of August 31, 2000 through the date last insured of December 31, 2005.

3.   Through the date last insured, the claimant had the following severe impairments: fibromyalgia; degenerative disc disease; diabetes; sleep apnea; obesity; depression; anxiety.

4.   Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.   After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she was capable of lifting and carrying 20 pounds occasionally and 10 pounds frequently; she could sit about 6 hours and stand and/or walk for 2 hours in an 8-hour day with regular breaks (i.e., 15 minutes in the morning, 30 minute lunch, 15 minutes in afternoon); she had an unlimited ability to push/pull within these exertion limits; she could frequently climb ramps and stairs and occasionally climb ladders, ropes, and scaffolds; she could frequently balance; she could occasionally kneel, crouch, and crawl; she had to avoid concentrated exposure to vibration and hazards.  Mentally, the claimant was able to get along with others, understand detailed instructions, concentrate and perform detailed tasks and adapt to workplace changes and supervision.

6.   Through the date last insured, the claimant was unable to perform any past relevant work.

7.   The claimant was born on XXXXX, 1958 and was 47 years old, which is defined as a younger individual age 18-49, on the date last insured.[3]

8.   The claimant has at least a high school education and is able to communicate in English.

9.   The claimant has acquired work skills from past relevant work.

10.  Considering the claimant's age, education, work experience, and residual functional capacity, the claimant had acquired work skills from past relevant work that were transferable to other occupations with jobs existing in significant numbers in the national.

---

[3]  The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

11.    The claimant was not under a disability, as defined in the Social Security Act, at any time from August 31, 2000, the alleged onset date, through December 31, 2005, the date last insured.

AR at 1058-1068.

## VI.    ISSUES ON APPEAL

The principal issues on appeal are:

1.    Did the ALJ err in rejecting the opinions of Timothy Anderson, D.O, plaintiff's treating physician?

2.    Did the ALJ provide clear and convincing reasons for finding plaintiff not fully credible?

3.    Did the ALJ err in evaluating the lay witness testimony?

Dkt. 17 at 1-2; Dkt. 18 at 1.

## VII.    DISCUSSION

A.    The ALJ Did Not Err in Rejecting the Opinion of Timothy Anderson, D.O.

*1.    Standards for Reviewing Medical Evidence*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and

REPORT AND RECOMMENDATION - 8

making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751).  The ALJ must do more than merely state his conclusions.  "He must set forth his own interpretations and explain why they, rather than the doctors', are correct."  *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).  Such conclusions must at all times be supported by substantial evidence.  *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence.  *Id.*  An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record.  *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors.  *Lester*, 81 F.3d at 831.  However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them.  In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it.  Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2.  Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record.  *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

### 2.    *Dr. Anderson*

Timothy Anderson, D.O., has served as plaintiff's treating physician since 1993.  AR at 1018.  Dr. Anderson has diagnosed plaintiff with degenerative joint disease of her lumbar spine and fibromyalgia.  AR at 249.  He continued to treat plaintiff throughout the period under

consideration (August 31, 2000 through December 31, 2005), and was the only treating or examining source to offer an opinion on the severity of plaintiff's impairments. On July 28, 2009, Dr. Anderson submitted a medical source statement documenting plaintiff's most prominent problems, which included fibromyalgia with chronic fatigue syndrome, degenerative arthritis in her cervical and lumbar spine and hips, and depression. AR at 1018-19. He also noted that plaintiff's hypertension, diabetes, and hypothyroidism impact her overall health. AR at 1019. With respect to plaintiff's fibromyalgia, Dr. Anderson asserted that "Ms. Durbin has had these symptoms for a number of years and was first diagnosed in 2002. She has become progressively disabled over the past few years due to the above symptoms." AR at 1018. He further noted that "physical examination is consistent with myofibrositis." AR at 1018. Dr. Anderson opined that plaintiff "has not been capable of gainful employment on a continuous basis since December 31, 2005." AR at 1019. Finally, he opined that plaintiff can lift and carry five pounds frequently and ten pounds occasionally, seldom bend, squat, kneel, crawl and climb, and can tolerate exposure to unprotected heights, moving machinery, marked changes in temperature and humidity, and driving automobile equipment. AR at 1020. Dr. Anderson's opinion was based upon his review of treatment notes from other sources, image reports, as well as his own examinations of plaintiff during the relevant period. AR at 1018-19 (discussing Evergreen Hospital records, her "recent lumbar spine MRI" results, as well as range of motion shown on "physical examination").

In addition to his 2009 statement, Dr. Anderson submitted a very brief letter dated December 4, 2012, stating that "Ms. Durbin was first diagnosed with fibromyalgia in 1999," and she "would meet criteria of both 1990 and 2010 guidelines. AR at 1440. Finally, the letter provides that "Ms. Durbin's history and exam is consistent with fibromyalgia." AR at 1440.

The first ALJ who considered plaintiff's claim in 2009 rejected Dr. Anderson's July

2009 opinion on the grounds that "the objective medical evidence as considered as a whole, as

well as the progress notes of Dr. Anderson[,] fails to provide support for this opinion."  AR at

24.[4]  As noted above, the Court remanded the case, in part, for further consideration of Dr.

Anderson's opinion.  AR at 1141-43.  Specifically, the Court found that the ALJ improperly

rejected Dr. Anderson's opinion regarding the severity of plaintiff's limitations stemming from

her fibromyalgia based upon the lack of objective medical evidence in the record to support his

opinion, as the lack of objective medical evidence was consistent with the nature and

symptoms of fibromyalgia.[5]  In addition, the Court found that if there was conflicting evidence

in the record from another physician regarding the impact of plaintiff's fibromyalgia on her

ability to work, "in such a situation, an ALJ must consider the factors listed in §

404.1527(d)(2)-(6) in determining what weight to accord the opinion of the treating

physician."[6]  AR at 1142.  The Court noted that "no such discussion occurred in the ALJ's

decision, although he appears to have concluded that Dr. Anderson's opinion was inconsistent

_____

[4] For example, the ALJ noted that when Dr. Anderson saw plaintiff "on November 14, 2005, the claimant was not in any distress . . . Examination of the extremities was unremarkable."  AR at 24.  In addition, the ALJ noted that "objective evidence of 'trigger point' testing and results during the relevant period is lacking in the record."  AR at 24.  The ALJ also noted that when seen one month after the date Dr. Anderson noted plaintiff was unable to work, her physical examination was unchanged.  AR at 24-25 (citing AR at 805).

[5] Fibromyalgia's cause or causes are unknown, there is no cure, and of greatest importance to disability law, its symptoms are entirely subjective.  There are no objective physical signs, laboratory results, or x-rays that test for the presence or severity of fibromyalgia.  *See Jordan v. Northrop*, 370 F.3d 859, 872-73 (9th Cir. 2004) (providing that "[o]bjective tests are administered to rule out other diseases, but do not establish the presence or absence of fibromyalgia.").  Thus, the lack of objective medical findings in Dr. Anderson's treatment notes cannot serve as a basis for discounting or discrediting Dr. Anderson's medical opinion.  It is error to effectively require "objective evidence" for a disease that eludes such measurement.  *See Benecke*, 379 F.3d at 594.

[6] These include length of the treatment relationship and the frequency of examination; nature and extent of the treatment relationship; supportability; consistency; specialization; and other factors.  *Id.*

REPORT AND RECOMMENDATION - 11

with the opinion of the state agency reviewing physician." AR at 1142 (citing AR at 24-25).

Finally, the Court found that the ALJ did not provide any deferential treatment to Dr.

Anderson's opinion based upon his status as plaintiff's treating physician, which the ALJ

should have done even if Dr. Anderson's opinion was contradicted by the opinion of the state

agency reviewing physician. AR at 1142-43 (citing *Orn v. Astrue,* 495 F.3d 625, 632-33 (9th

Cir. 2007)). The Court directed the ALJ, on remand, "to reassess Dr. Anderson's medical

opinion in light of the direction provided by this opinion." AR at 1143.

On remand, a new ALJ conducted the second administrative hearing in December

2012. AR at 1075-1100. The ALJ discussed the scope of the Court's remand in detail, noting

that "the court ordered reassessment of the treating physician's opinion and reassessment of the

lay witness opinion. And then more specifically to evaluate the amount of time sitting and

standing during a typical work day. And all those issues then necessitated reevaluation in the

RFC Steps 4 and 5." AR at 1080. In the ALJ's written decision, the ALJ noted that "the

district court upheld the previous [ALJ]'s evaluation of the medical opinions except for the

previous [ALJ]'s rejection of the opinion from the claimant's treating physician, Dr. Anderson.

As such, further evaluation of this opinion is necessary." AR at 1065. The ALJ then discussed

several reasons why she afforded Dr. Anderson's opinion "little weight." AR at 1066-67.

First, the ALJ rejected Dr. Anderson's opinion that plaintiff was disabled because Dr.

Anderson relied upon impairments post-dating plaintiff's December 31, 2005 date last insured.

Specifically, the ALJ noted that Dr. Anderson's 2009 opinion was provided more than three

years after plaintiff's date last insured, and that Dr. Anderson "listed the various impairments

that the claimant had been diagnosed with *through 2009*, including fibromyalgia, degenerative

arthritis [of the] cervical spine, degenerative arthritis of the lumbar spine, degenerative arthritis

of the hips, and depression." AR at 1065 (emphasis added). For example, the ALJ pointed

out that plaintiff's "problems with her hips did not start until after her date last insured.  There is very little evidence of complaints regarding her cervical functioning prior to the date last insured."  AR at 1066.  The ALJ noted that Dr. Anderson "acknowledged that her arthritis in her hips became an issue only recently (i.e., at the time he gave his opinion in 2009)."  AR at 1066.  The ALJ pointed out that when Dr. Anderson provided his opinion in 2009, he was relying upon "recent" medical evidence such as "cervical surgery in 2008" and "MRI findings of her lumbar spine in 2006 and 2009 (again after her date last insured" and 'recent' x-rays regarding her hips."  AR at 1066.  Similarly, the ALJ pointed out that Dr. Anderson relied upon "objective findings in 2006 and 2009" to assess plaintiff's limited ability to sit and stand due to her lumbar spine.  AR at 1066.  Dr. Anderson's reliance on recent impairments was significant, as Dr. Anderson acknowledged that plaintiff's "impairments had been progressive – i.e., fibromyalgia was diagnosed in 2002 (according to his opinion from 2009) and that she had become 'progressively disabled over the past few years due to the above symptoms.'"  AR at 1066.

Second, the ALJ pointed out that Dr. Anderson provided inconsistent statements regarding the date of plaintiff's fibromyalgia diagnosis.  In his 2009 statement, Dr. Anderson "noted that fibromyalgia was diagnosed in 2002, though he also provided an inconsistent statement more recently (i.e., November 2012) saying that the claimant was diagnosed with fibromyalgia in 1999."  AR at 1066 (citing AR at 1440).  The ALJ found that "the reliability of Dr. Anderson's opinion is called into question by these own (sic) internal inconsistencies."  AR at 1066.

Third, the ALJ found that Dr. Anderson "concludes, without explanation, that the claimant's problems caused her to be unable to work since December 31, 2005, which happens to be the last day in her insured period.  How he correlates to this date is completely

unexplained and appears to be an exaggeration in an attempt to secure benefits for the claimant, especially in light of his contemporaneous statement that her problems had become worse over the last 'several' years."  AR at 1066.  The ALJ found that "by his own statements, many of the impairments that he lists as being disabling did not arise or [were] not causing significant problems until after her date last insured."  AR at 1066.  For example, the ALJ pointed out that in April 2008 plaintiff "rated her pain at two out of ten on average and three out of ten pain at its worst."  AR at 1066 (citing AR at 499).

Fourth, the ALJ noted that "how [Dr. Anderson] arrived at his conclusion that she was 'incapable of gainful employment' is unclear – he never explained that what it was about gainful employment that she could not do."  AR at 1066.  For example, "although he claims that the claimant has a limited ability to sit, stand, or walk at one time, he failed to state how much she could perform these activities cumulatively."  AR at 1066.  The ALJ pointed out that "this conclusory statement is actually a vocational issue, one that he is not qualified to give."  AR at 1066-67.

Finally, the ALJ explicitly addressed the district court's directive that the ALJ afford Dr. Anderson's opinion appropriate deference, as "a treating physician's opinion is normally entitled to deference."  AR at 1066.  The ALJ explained, however, that "that deference is not absolute.  An opinion must be supported by clinical findings and consistent with other evidence.  Here, given that Dr. Anderson's opinion is based on impairments that were not an issue or a significant issue prior to December 31, 2005, the basis for his opinion overall is

1    called into question." AR at 1066. As a result, the ALJ gave Dr. Anderson's opinion little

2    weight. AR at 1067.[7]

3        The Court concludes that the ALJ did not err in evaluating Dr. Anderson's opinion that

4    plaintiff "has not been capable of gainful employment on a continuous basis since December

5    31, 2005" and properly provided several specific and legitimate reasons, supported by

6    substantial evidence, for affording Dr. Anderson's opinion little weight. AR at 1018-19, 1065-

7    67.[8]

8        First, plaintiff contends that the ALJ erred by failing to comply with the Court's

9    explicit directives, thereby violating the law of the case doctrine. Dkt. 17 at 4. Plaintiff argues

10   that "the ALJ again gave little weight to Dr. Anderson's opinion . . . [and] did not consider the

11   factors set out in 20 C.F.R. §§ 404.1527(d), as noted in the Report and Recommendation." *Id.*

12   Plaintiff asserts that "this case was previously remanded so that the ALJ could consider 'length

13   of the treating relationship and the frequency of examination; nature and extent of the

14   treatment relationship, supportability, consistency, specialization, and other factors.'" *Id.*

15   (citing AR at 1142, fn. 3). On remand, although "the ALJ considered perceived

16   inconsistencies between the record and Dr. Anderson's opinion . . . [the ALJ] made no mention

17   of the factors discussed in the Regulations." *Id*. at 5. Thus, plaintiff asserts that the error

18   previously identified by the Court remains. *Id.*

19       Just this week, the Ninth Circuit Court of Appeals held, as a matter of first impression,

20   that "both the law of the case doctrine and rule of mandate apply in the social security

21       [7] The ALJ adopted the remaining analysis and evaluation of the previous ALJ regarding
22   the State Agency physician's opinions and all other opinions not specifically discussed. AR at
     1067.
23       [8] As Dr. Anderson's opinion that plaintiff became disabled on December 31, 2005 was
     contradicted by other medical opinions that she was not, AR at 443-50, the ALJ was only
24   required to provide specific and legitimate reasons for rejecting Dr. Anderson's opinion. *See
     Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

REPORT AND RECOMMENDATION - 15

1    context." *Stacy v. Colvin*, Slip Op. No. 13-36025 (9th Cir. June 7, 2016).  In *Stacy*, the court

2    reiterated that "the law of the case doctrine generally prohibits a court from considering an

3    issue that has already been decided by that same court or a higher court in the same case.  The

4    doctrine is concerned primarily with efficiency, and should not be applied when the evidence

5    on remand is substantially different, when the controlling law has changed, or when applying

6    the doctrine would be unjust."  Slip. Op. at 6 (internal citations omitted).

7         The Ninth Circuit explained that the rule of mandate is similar to, but broader than, the

8    law of the case doctrine, as it provides that "any district court that has received the mandate of

9    an appellate court cannot vary or examine that mandate for any purpose other than executing

10   it."  Slip. Op. at 7 (citing *Hall v. City of Los Angeles*, 697 F.3d 1059, 1067 (9th Cir. 2012)).

11   However, the district court may decide anything not foreclosed by the mandate or reexamine

12   any issue on remand that is not inconsistent with the mandate.  *Id*. at 7-8.  Finally, the court in

13   *Stacy* observed that an appellate court's "remand order must be read holistically," including

14   "[l]ooking at the full text of . . . [the] order, combined with the court's opinion[.]"  *Id*. at 9.  In

15   the context of social security appeals, the district court is acting as the appellate court, and it is

16   the ALJ's responsibility on remand to properly execute the remand order.  *See id*. at 9-10

17   (concluding that when the ALJ revisited categorization of the claimant's former job on remand,

18   this was "something that the mandate neither required nor prevented her from doing" and

19   therefore "did not exceed her authority under [the district court's] broad remand order.).

20        Here, the Court finds that in re-evaluating Dr. Anderson's opinion, the ALJ did not run

21   afoul of the law of the case doctrine or the rule of mandate.  First, the Court is not persuaded

22   by plaintiff's contention that the ALJ failed to comply with the Report and Recommendation's

23   directive to consider the factors set out in 20 C.F.R. §§ 404.1527(d), which include the length

24   of the treating relationship and the frequency of examination, the nature and extent of the

treatment relationship, supportability, consistency, specialization, and other factors.  AR at

1142, fn. 3.  As the Commissioner points out, the ALJ explicitly noted that she "considered

opinion evidence in accordance with the requirements of 20 CF.R. 404.1527" as directed by

the district court.  AR at 1062.  Furthermore, the ALJ considered and expressly discussed the

deference generally owed to a treating physician's opinion, consistent with the Court's order,

and explained the reasons why she believed such deference was not called for in this particular

case.  AR at 1066, 1142-43.  As noted above, the district court's "remand order must be read

holistically," and the second ALJ adequately resolved the Court's concern that Dr. Anderson's

opinion had been given short shrift, despite his status as plaintiff's longtime treating physician.

The ALJ's analysis and detailed discussion of Dr. Anderson's opinion was cogent, supported

by substantial evidence in the record, and not inconsistent with the Court's directive on

remand.

Second, plaintiff argues that the ALJ erred by rejecting the whole of Dr. Anderson's

opinion because of references to impairments post-dating her date last insured.  Dkt. 17 at 6.

Plaintiff asserts that to do so was inconsistent with 20 C.F.R. § 404.1527(d) and was legal

error.  *Id.* (citing *Ghanim v. Colvin*, 763 F.3d 1154, 1160-61 (9th Cir. 2014)).  However, the

ALJ reasonably concluded that there was little evidence of complaints regarding plaintiff's

cervical functioning or hip pain prior to her date last insured, which undermined Dr.

Anderson's assertion that the five listed conditions "resulted in her disability" by no later than

December 31, 2005.  AR at 1018-19, 1066.  As the ALJ pointed out, in April 2008, plaintiff

reported that "her neck is feeling quite well" although she was having pain in her hips and low

back pain.  AR at 499.  Dr. Anderson also acknowledged in 2009 that "her current complaints

are bilateral hip pain – recent hip xray documents osteoarthritis bilateral hip and physical exam

is consistent with this," suggesting that her hip pain was a more recent complaint.  AR at 1019.

REPORT AND RECOMMENDATION - 17

1   This was a specific and legitimate reason for the ALJ to afford Dr. Anderson's opinion that

2   these impairments caused a disability beginning several years earlier less weight.

3        Third, plaintiff argues that the ALJ cherry-picked the record by identifying perceived

4   inconsistencies with Dr. Anderson's opinion.  Dkt. 17 at 6.  For example, plaintiff contends

5   that the ALJ's note that plaintiff reported her neck feeling "quite well" in 2008 took her

6   statement out of context while rejecting the majority of the record, which was favorable to

7   plaintiff's claim. *Id*. (citing AR at 499, 1066).  Similarly, plaintiff contends that reports of

8   improvement, that the claimant is "doing well" or responding to treatment do not necessarily

9   show that she is able to function in the workplace. Dkt. 17 at 6.

10        An ALJ may not "cherry pick" from the record to support a conclusion, but must

11   account for the context of the record as a whole.  *See generally Reddick,* 157 F.3d at 722–23

12   ("In essence, the ALJ developed his evidentiary basis by not fully accounting for the context

13   of materials or all parts of the testimony and reports. His paraphrasing of record material is not

14   entirely accurate regarding the content or tone of the record.").  Impermissible cherry-picking

15   is therefore an issue of evidentiary support: an ALJ may not simply cite isolated pieces of

16   evidence as support for a conclusion, without taking into account the record as a whole.  *See*

17   *Sousa v. Callahan,* 143 F.3d 1240, 1243 (9th Cir. 1998).  Here, however, the ALJ's citation of

18   specific instances in the record to support her point – that several of plaintiff's impairments

19   identified by Dr. Anderson became more severe following her date last insured – does not

20   constitute cherry-picking.  In plaintiff's discussion of the alleged "cherry-picking" by the ALJ,

21   for example, plaintiff fails to cite any instances in the record that contradict the ALJ's

22   interpretation of the evidence.  *See* Dkt. 17 at 5-6.

23        Plaintiff further argues that the ALJ erred by concluding that Dr. Anderson's

24   unexplained reference to the date he selected was evidence that he exaggerated in an effort to

REPORT AND RECOMMENDATION - 18

help plaintiff.  AR at 1066.  Plaintiff points out that Dr. Anderson noted plaintiff had difficulty

doing an exercise program because of her pain as early as January 2002, AR at 321, and that

this pain would become severe if she was active, AR at 310, 416, 423.  Plaintiff argues that

these treatment notes are consistent with Dr. Anderson's 2009 opinion, demonstrating that

there was no evidence of exaggeration.  Plaintiff also asserts that it is not difficult to infer why

Dr. Anderson selected December 31, 2005 as the date of plaintiff's disability, as it was the one

date that was relevant to this case – plaintiff's date last insured.  Dkt. 17 at 7.

Although the treatment notes cited by plaintiff do reflect plaintiff's 2002 reports that

she was having difficulty getting into any exercise program due to chronic back problems, the

records do not reflect reports by plaintiff that she was experiencing disabling back pain as

opined by Dr. Anderson.  Her back pain was not even plaintiff's primary complaint in those

treatment notes.  AR at 310, 416, 423.   For example, plaintiff told Dr. Anderson in one of

those notes that she was experiencing "less back pain" although she's been having some

spasms.  AR at 310.  Similarly, although an October 2002 counseling note provided that she

"now can't exercise due to pain," it also reflects her report that she "has not gone back to

doctor" to seek treatment for her back problem. AR at 416.  Without more, these limited

treatment notes documenting plaintiff's back pain in 2002 do not corroborate Dr. Anderson's

conclusions that plaintiff's back pain was so severe and limiting as to render her unable to

perform any work as of 2005.  Moreover, the ALJ could reasonably infer that Dr. Anderson's

selection of plaintiff's date last insured as a disability onset date, in the absence of any other

explanation for his choice, suggests exaggeration or an attempt to "help" plaintiff obtain

disability benefits.  *See Bayliss*, 427 F.3d at 1216 ("[W]hen evaluating conflicting medical

opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory,

and inadequately supported by clinical findings.").

REPORT AND RECOMMENDATION - 19

Finally, plaintiff contends that the ALJ erred by questioning the reliability of Dr. Anderson's opinion because he identified two inconsistent dates regarding when plaintiff was first diagnosed with fibromyalgia.  AR at 1066.  In 2009, Dr. Anderson wrote that plaintiff had experienced symptoms of fibromyalgia for several years and was "first diagnosed in 2002." AR at 1018.[9]  However, in December 2012, Dr. Anderson submitted a short letter stating that "Ms. Durbin was first diagnosed with fibromyalgia in 1999."  AR at 1440.  Plaintiff asserts that because both dates given by Dr. Anderson pre-dated plaintiff's date last insured, it is unclear why this inconsistency was a relevant concern for the ALJ.  Dkt. 17 at 7.  However, the Court is unpersuaded that the ALJ erred by considering this inconsistency, especially when plaintiff needs to establish that she was already disabled many years ago in 2005.  The ALJ could reasonably conclude that "Dr. Anderson appears to have some difficulty providing consistent, accurate dates of when the claimant demonstrated fibromyalgia symptoms," AR at 1066, which is significant because Dr. Anderson acknowledged that plaintiff's fibromyalgia has progressively worsened "over the past few years" pre-dating his 2009 opinion.  AR at 1018-19.  This inconsistency undermined Dr. Anderson's opinion that plaintiff was disabled as of December 31, 2005, and was a specific and legitimate reason for the ALJ to afford his opinion little weight.[10]

---

[9] Plaintiff was noted to be experiencing myalgias as early as December 2000, AR at 333, and in March 2003 Dr. Anderson noted a presumptive diagnosis of fibromyalgia.  AR at 298.  A rheumatologists evaluated plaintiff in April 2003 and opined that her symptoms were probably related to fibromyalgia.  AR at 1032.  Dr. Anderson also noted a diagnosis of fibromyalgia in September 2003.  AR at 296.

[10] The Court also agrees with the Commissioner that the ALJ's duty to recontact Dr. Anderson to further develop the record was not triggered in this case, as there is no suggestion that the record was ambiguous or inadequate to allow for proper evaluation of the evidence. *See Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001); SSR 96-5p.

1      Accordingly, the ALJ properly provided several specific and legitimate reasons for

2   rejecting Dr. Anderson's opinion, and these reasons were supported by substantial evidence.

3   The ALJ did not err in affording his opinion little weight.

4      B.   The ALJ Did Not Err in Evaluating Plaintiff's Credibility

5          1.   Standard for Evaluating Credibility

6      As noted above, credibility determinations are within the province of the ALJ's

7   responsibilities, and will not be disturbed, unless they are not supported by substantial

8   evidence.  A determination of whether to accept a claimant's subjective symptom testimony

9   requires a two-step analysis.  20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281; SSR

10  96-7p.  First, the ALJ must determine whether there is a medically determinable impairment

11  that reasonably could be expected to cause the claimant's symptoms.  20 C.F.R.

12  §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82; SSR 96-7p.  Once a claimant

13  produces medical evidence of an underlying impairment, the ALJ may not discredit the

14  claimant's testimony as to the severity of symptoms solely because they are unsupported by

15  objective medical evidence.  *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc);

16  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988).  Absent affirmative evidence showing

17  that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for

18  rejecting the claimant's testimony.  *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.

19      When evaluating a claimant's credibility, the ALJ must specifically identify what

20  testimony is not credible and what evidence undermines the claimant's complaints; general

21  findings are insufficient.  *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.  The ALJ may

22  consider "ordinary techniques of credibility evaluation" including a reputation for truthfulness,

23  inconsistencies in testimony or between testimony and conduct, daily activities, work record,

24  and testimony from physicians and third parties concerning the nature, severity, and effect of

the symptoms of which he complains.  *Smolen*, 80 F.3d at 1284; *see also Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

> ### 2. The ALJ Provided Several Clear and Convincing Reasons for Finding Plaintiff Less Than Fully Credible

As a threshold matter, the ALJ incorporated by reference the aspects of the first ALJ's credibility finding which this Court previously found to be clear and convincing.  AR at 1063.  The ALJ then discussed two additional reasons for finding plaintiff less than fully credible.

First, the ALJ incorporated by reference her step two discussion of plaintiff's testimony regarding her carpal tunnel syndrome at the second administrative hearing.  At step two, the ALJ found that although plaintiff alleged during the second administrative hearing that she had carpal tunnel symptoms that started prior to her date last insured and "she first noticed problems in September 2005," this testimony was not credible.  AR at 1058.  The ALJ noted that plaintiff was "trying to remember events that happened 7 years ago.  Given the length of time that has elapsed, the only way to determine how accurate her recollection is of her symptoms is to compare them to what she reported at the time."  AR at 1059.  The ALJ then concluded that "the claimant medical evidence shows that her recollection of carpal tunnel syndrome is not accurate."  AR at 1059.

Specifically, the contemporaneous treatment notes from April 2005 reflected plaintiff's report to Dr. Pearce, during an evaluation of her neck, that she had problems with her left arm and then her right, but after a physical examination and reviewing an MRI he concluded that she did not have "any significant deficits" and since her arm pain had improved he recommended conservative treatment.  AR at 1059 (citing AR at 467).  The ALJ noted that plaintiff made "no further complaints that relate to her hands or arms until 2006, when she was referred by her treating physician, Timothy Anderson, D.O., to Edwin Vyhmeister, M.D."  AR

at 1059 (citing AR at 1379).  Dr. Anderson made this referral in late April 2006, which was the

first time plaintiff mentioned tingling and numbness in her hand.  AR at 1059 (citing AR at

799).  During plaintiff's appointment with Dr. Vyhmeister on May 3, 2006, plaintiff reported

"the onset of hand parasthesias beginning approximately January 2006."  AR at 1379.  At that

time, she reported problems gripping, lifting, and holding objects.  AR at 1059.  Accordingly,

the ALJ concluded that "based on the lack of complaints and her statements in 2006, the

claimant's carpal tunnel issues did not arise prior to the expiration of her date last insured."

AR at 1059.  The ALJ "reject[ed] the claimant's testimony to the contrary as it is inconsistent

with her reports in the contemporary medical treatment notes."  AR at 1059, 1063.

Second, the ALJ found that plaintiff was less than fully credible because she "has made

no distinction in her functioning over the years – in other words, it is her contention that her

limitations were such that she was unable to work throughout the period through her date last

insured and beyond."  AR at 1063.  However, the ALJ found that plaintiff's claims "are

inconsistent with her statement to her providers."  AR at 1063.  The ALJ then discussed

plaintiff's report to Dr. Zimmerman in May 2006 that she had back pain in 1999 that was more

persistent starting in 2002 (two years after her alleged onset date) and worse over the past six

to twelve months (i.e., starting sometime in 2005, five years after her alleged onset date).  AR

at 1063-64.[11]  The ALJ further noted that plaintiff sometimes reported feeling better, and rated

her pain as mostly mild in severity or mild to moderate even after her date last insured.  AR at

1064 (citing AR at 499).  Thus, the ALJ found that "there are several inconsistencies regarding

her alleged disabling pain that she claims has been consistent since 2000.  This, in conjunction

---

[11] The ALJ's citation to Dr. Zimmerman's treatment note in the record at 7F/22 is
incorrect.  The Court had difficulty locating that particular treatment note, and as neither party
referenced it in their briefs, it is unclear whether it was erroneously omitted from the record
before the Court.

REPORT AND RECOMMENDATION - 23

1    with the previously upheld reasons for rejecting the claimant's testimony, and with her most

2    recent claims regarding carpal tunnel that are inconsistent with her reports detailed in the

3    medical evidence, leads me to conclude that the claimant's testimony is not entirely credible."

4    AR at 1064.

5          Plaintiff contends that the ALJ erred in evaluating her credibility because "on remand,

6    the ALJ gave only one reason for finding that Plaintiff's allegations were not fully credible:

7    that Plaintiff's contentions at the hearing were inconsistent with her reports to her treatment

8    providers." Dkt. 17 at 9 (citing AR at 1063-64). Plaintiff argues that contrary to the ALJ's

9    finding that plaintiff did not make a distinction regarding her functioning, plaintiff testified to

10   the impact of her impairments on her functioning between 2000 and 2005 at the 2009

11   administrative hearing. *Id*. at 10 (citing AR at 42-43, 64-66). For example, plaintiff testified

12   that her symptoms worsened with sitting, standing, or walking and she was not able to lift more

13   than a half-gallon of milk. AR at 64-65. Plaintiff testified that an activity like vacuuming or

14   visiting friends would impact her for days afterward. AR at 66. Plaintiff argues that "this

15   testimony was consistent with plaintiff's reports to her treatment providers about her limited

16   ability to engage in activities." Dkt. 17 at 10 (citing AR at 252, 296, 310, 346, 385, 394, 406,

17   416, 423, 428, 471). Plaintiff further argues that she testified in 2009 that her condition had

18   gotten worse since 2005, AR at 59, 62, and was also consistent with evidence in the record

19   documenting worsening of her back impairment, need for neck surgery, and onset of other

20   impairments after the date last insured. *Id*. (citing AR at 510, 535, 574, 799, 1379). Thus,

21   plaintiff contends that the "records documenting plaintiff's reports of a worsening of her

22   condition over time" is not a clear and convincing reason for finding plaintiff not fully credible

23   "where she testified to just such a worsening at the hearing." Dkt. 17 at 10 (citing *Burrell*, 775

24   F.3d at 1136-37).

REPORT AND RECOMMENDATION - 24

1    The ALJ's two additional reasons for finding plaintiff less than fully credible are clear

2  and convincing, and supported by substantial evidence.  Plaintiff is correct that she testified

3  during the first hearing that her symptoms have progressively worsened since 2005, AR at 59,

4  62, and plaintiff cites to numerous records showing this worsening in post-2005 medical

5  records.  For example, a diagnostic imaging report dated March 30, 2007 showed that plaintiff

6  was reporting "neck pain for 9 months."  AR at 510.  In July 2007, Dr. Roh noted that plaintiff

7  had a "one-year history of progressively worsening neck pain."  AR at 511.  However, plaintiff

8  also testified that she has been experiencing a constant and disabling level of pain and fatigue

9  since her alleged disability onset date in 2000 which rendered her unable to work throughout

10  the period through her date last insured, and that was the point that the ALJ was making – not

11  that plaintiff has denied progression of her symptoms over time.

12    Here, the ALJ reasonably concluded that "there are several inconsistencies regarding

13  her alleged disabling pain that she claims has been consistent since 2000."  AR at 1064.  As

14  noted above, in 2008 plaintiff reported that her neck was feeling "quite well" and she reported

15  very low pain levels overall.  AR at 499.  These inconsistencies, coupled with the previously

16  upheld reasons and the ALJ's finding that the contemporaneous medical records undermined

17  plaintiff's testimony at the second hearing regarding the onset of her carpal tunnel syndrome

18  (which plaintiff does not challenge), constitute clear and convincing reasons supported by

19  substantial evidence for finding plaintiff not fully credible.  The ALJ did not err in assessing

20  plaintiff's credibility on remand.

21    C.    The ALJ Did Not Err in Evaluating the Lay Witness Testimony

22    In order to determine whether a claimant is disabled, an ALJ may consider lay-witness

23  sources, such as testimony by nurse practitioners, physicians' assistants, and counselors, as well

24  as "non-medical" sources, such as spouses, parents, siblings, and friends.  *See* 20 C.F.R. §

404.1513(d).  Such testimony regarding a claimant's symptoms or how an impairment affects

his/her ability to work is competent evidence, and cannot be disregarded without comment.

*Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993).  If an ALJ chooses to discount testimony

of a lay witness, he must provide "reasons that are germane to each witness," and may not

simply categorically discredit the testimony.  *Dodrill,* 12 F.3d at 919.

### 1.  Mr. Durbin

Plaintiff's husband of thirty-two years, Robert Durbin, also testified during the first

administrative hearing.  AR at 74-80.  Specifically, Mr. Durbin testified that after plaintiff

injured her back while lifting a tote in 2000, she was in "almost constant pain" which "really

started depressing her."  AR at 75.  He testified that she stopped working because "she was

required to be on her feet all day long with her job and it just got to be too much trouble for her.

I mean, she was in constant pain and she would come home at night, and she would just cry . . .

[W]e were going to doctors all the time trying to get some help, trying to find out what we could

do."  AR at 75-76.  He also testified that due to the symptoms of her fibromyalgia, back pain,

and depression, she had a window in the morning where her pain was a little less so she could

take their daughter to school, but "usually by noon she would be flat on her back in bed."  AR at

76.  Mr. Durbin asserted that by 2002-2003, he had taken over doing the family's laundry,

grocery shopping, yard work, and cooking.  AR at 76.   When the family attempted to take a trip

to Idaho, "her back pain was just so great we had to turn around and go home."  AR at 78.

Although his wife continued to be interested in scrapbooking and other hobbies, she could only

engage in such crafts for one hour before having to go lay down.  AR at 79.

The first ALJ found that Mr. Durbin's testimony concerning the intensity, persistence,

and limiting effects of plaintiff's symptoms were not credible to the extent that they were

inconsistent with the RFC assessment.  AR at 20-21.  The Court, however, found that "the ALJ

summarily rejected Mr. Durbin's testimony to the extent it was inconsistent with the ALJ's RFC assessment, but did not provide any specific and germane reasons for doing so.  On remand, the ALJ is directed to reconsider, or at least further support, his findings with respect to Mr. Durbin's lay witness testimony."  AR at 1149.

The second ALJ re-evaluated Mr. Durbin's testimony and written statement as directed, but gave his lay witness statement limited weight.  AR at 1064.  The ALJ pointed out that plaintiff was able to travel to Maui in 2003, which obviously required her to sit more than one hour, contrary to Mr. Durbin's testimony that she could only sit up to one hour to perform her crafts or hobbies before needing to lie down.  AR at 1064.  The ALJ asserts that the Court has already found that the claimant's activities were inconsistent with her own claims of limitations, and "as such, these same activities are inconsistent with her husband's claims that the claimant spent most of the day lying down."  AR at 1064.  The ALJ also rejected his testimony because it post-dated plaintiff's date last insured by three years and "his testimony does not provide specific timeframes," and plaintiff "has reported significantly lower pain levels to a treating source than alleged by Mr. Durbin."  AR at 1064.

The ALJ did not err in evaluating Mr. Durbin's testimony.  Where an ALJ gives valid reasons for rejecting a claimant's testimony, those reasons are equally germane to reject similar testimony by a lay witness.  *Valentine v. Comm'r Soc. Sec. Admin*., 574 F.3d 685, 694 (9th Cir. 2009).  Here, the ALJ found that plaintiff's travel to Hawaii undermined Mr. Durbin's testimony that she could not sit for more than one hour at a time.  AR at 79, 1064.  Plaintiff does not argue that this was an invalid reason for rejecting his testimony, although plaintiff challenges the ALJ's other reasons.  Accordingly, the ALJ provided a specific and germane reason to reject Mr. Durbin's testimony.

1            *2.  Ms. Otto*

2        Jeanette Otto, whose daughter was in the same kindergarten class as plaintiff's

3    daughter in 2000, submitted a declaration dated July 27, 2009.  AR at 1011.  Ms. Otto stated

4    that plaintiff "was not able to be in the classroom as she would have liked to be or attend field

5    trips, help with class parties, etc.  Pain was very limiting.  She was not getting better."  AR at

6    1011.  Ms. Otto stated that "while I cannot remember specific dates, I have noticed a decline in

7    Cheri's physical abilities.  I remember going to a garage sale with her once and she was fine

8    one minute and then next she was very unable to get back to the car, which was not far away."

9    AR at 1011.  Ms. Otto stated that plaintiff is unable to grocery shop, pay monthly bills, or

10   prepare family dinners on a regular basis due to pain.  AR at 1011.  She opined that "I cannot

11   imagine how Cheri could work in any capacity.  If I were an employer, I would have to

12   recognize that she emotionally and physically could not hold down a job."  AR at 1011.

13       The ALJ rejected Ms. Otto's opinion because "there is no evidence that she has

14   witnessed the claimant's condition over a significant and sustained period of time."  AR at

15   1065.  The ALJ also rejected Ms. Otto's opinion as being inconsistent with plaintiff's

16   activities.  AR at 1065.  The ALJ also found that the fact that Ms. Otto cannot remember exact

17   dates "further limits the helpfulness of this statement, as the claimant must establish that she

18   became disabled on or before December 31, 2005."  AR at 1065.  The ALJ therefore afforded

19   "only some slight weight" to Ms. Otto's declaration.  AR at 1065.

20       The ALJ's statement that "the District Court has already found that the claimant's

21   activities were inconsistent with her own claims of limitations," and "these same activities are

22   inconsistent with the limitations alleged by Ms. Otto" was a germane reason for rejecting her

23   opinion.  AR at 1065.  The Court previously found that plaintiff's activities included

24   transporting her daughter to school, preparing meals, doing computer research, scrap booking,

REPORT AND RECOMMENDATION - 28

card making, traveling to Maui, and walking on a daily basis, and that such activities constituted a clear and convincing reason for the ALJ to challenge plaintiff's credibility.  AR at 1135.  Just as with Mr. Durbin's testimony, the ALJ could reasonably reject Ms. Otto's similar statement for the same valid reason.  The ALJ could also reasonably conclude that Ms. Otto's failure to attach any timeframe to her testimony regarding the "decline in Cheri's physical abilities" was a germane reason to give her opinion less weight.

## VIII.   CONCLUSION

The role of this Court is limited.  As noted above, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist.  *Andrews*, 53 F.3d at 1039.  When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld.  *Thomas,* 278 F.3d at 954.  While it may be possible to evaluate the evidence as plaintiff suggests, it is not possible to conclude that plaintiff's interpretation is the only rational interpretation.  Accordingly, the Court recommends that the final decision of the Commissioner be AFFIRMED.  A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **June 27, 2016**.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motion calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14)** days after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **July 1, 2016**.

REPORT AND RECOMMENDATION - 29

1    This Report and Recommendation is not an appealable order.  Thus, a notice of appeal

2  seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the

3  assigned District Judge acts on this Report and Recommendation.

4    DATED this 13th day of June, 2016.

5

6    _____

7    JAMES P. DONOHUE
     Chief United States Magistrate Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

REPORT AND RECOMMENDATION - 30